### 77037. FORESTER v. McDUFFIE et al.
(375 SE2d 488)

POPE, Judge.

On January 16, 1978, plaintiff Bob A. Forester purchased a tract of land from defendants in exchange for a warranty deed. According to the warranty deed, the land consisted of 207.6 acres. Shortly after purchasing the land, plaintiff learned that an adjoining landowner held superior title to approximately 7.09 acres which defendants had attempted to convey to plaintiff in the deed. On August 9, 1984, plaintiff filed a complaint against defendants alleging fraud and praying for attorney fees and punitive damages. On January 15, 1987, the complaint was amended to add a claim for breach of warranty of title. The amended complaint alleged the defendants were aware they lacked title to the disputed portion of land and acted in bad faith in issuing the warranty of title. Plaintiff again prayed for punitive damages and attorney fees for the alleged bad faith of defendants. At trial, defendants did not contest liability for the shortage in acreage and the issue of damages was submitted to the jury which awarded plaintiff a verdict of $6,500. The trial court directed a verdict in favor of defendants on the issue of punitive damages and attorney fees. Plaintiff appeals.

1. Exemplary damages are not allowed for a breach of contract. OCGA § 13-6-10. Therefore, plaintiff could recover exemplary or punitive damages only for the alleged tort of fraud and deceit. An action for fraud and deceit for shortage in acreage of land must be brought within four years after the right of action accrues, pursuant to the four-year period of limitation for damages to realty as set forth in OCGA § 9-3-30. See Rigdon v. Barfield, 194 Ga. 77 (2) (20 SE2d 587) (1942). Even if, in this case, the defendants' actions debarred or deterred the plaintiff from discovering the cause of action, the applicable period of limitation began to run when plaintiff discovered the fraud. See OCGA § 9-3-96. Plaintiff testified that on February 20, 1978, defendant Gerald McDuffie admitted to plaintiff that he had long been aware of a dispute regarding the land boundary. Plaintiff

testified he "found out for sure" there was a problem with the property by late summer 1978, after consulting an attorney and a land surveyor. However, plaintiff's complaint was not filed until August 9, 1984, six years from the time he learned of his alleged cause of action. Consequently, the court did not err in granting a directed verdict to the defendants on plaintiff's claim for punitive damages because said claim was barred by the applicable statute of limitation.

Plaintiff also prayed for attorney fees for the defendants' alleged bad faith and stubborn litigiousness. "[W]here the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow [expenses of litigation]." OCGA § 13-6-11. A plaintiff may not recover expenses of litigation for stubborn litigiousness where a bona fide controversy exists. *Bayliner Marine Corp. v. Prance*, 159 Ga. App. 456 (3b) (283 SE2d 676) (1981); *Nestlé Co. v. J. H. Ewing & Sons*, 153 Ga. App. 328 (4) (265 SE2d 61) (1980). For purposes of this litigation, defendants did not contest liability for the breach of warranty as to the shorted acreage but did contest the issue of damages in regard to the value of said land. Because a bona fide controversy existed as to plaintiff's damages, plaintiff was not entitled to expenses of litigation on the ground of stubborn litigiousness.

Nevertheless, plaintiff argues an issue of fact was created as to the bad faith of defendants in issuing a warranty of title to the disputed acres. Defendants, a widow and her children, obtained title to the land sold to plaintiff from the estate of their husband and father, J. N. McDuffie. The predecessor in title to plaintiff's adjoining landowner was J. N. McDuffie's brother. Plaintiff presented evidence that defendant Gerald McDuffie admitted his father and uncle never knew for certain where the true land line ran between their adjoining property. Plaintiff also presented evidence that when the adjoining land was surveyed for a new owner in 1977, Gerald McDuffie discussed the uncertainty of the land line with the surveyor who presented McDuffie with evidence that his family "might not own" a certain portion of the property they thought was theirs. Nevertheless, plaintiff failed to show Gerald McDuffie or any other defendant had actual knowledge that they did not hold title to the disputed acreage. For purposes of this litigation, defendants did not contest liability for breach of warranty as to the disputed acreage. However, the evidence showed actual ownership of the acreage in question was still in dispute and had never been judicially determined. Because no evidence was presented from which a jury could find defendants acted in bad faith, the lower court did not err in granting defendants' motion for directed verdict on the issue of attorney fees and expenses of litigation.

2. Plaintiff argues that the trial court's charge to the jury regarding calculation of damages for breach of warranty to land was errone-

ous and confusing. "In actions for recovery for deficiency in land the measure of damages generally is the pro rata part of the purchase-money paid or to be paid for deficiency with interest. . . . However, where a part of such property may be of greater value than other portions this is not necessarily a fixed rule." *Halliburton v. Collier*, 75 Ga. App. 316, 324 (43 SE2d 339) (1947); accord *Woodstock Village v. Fowler*, 154 Ga. App. 82 (1) (267 SE2d 558) (1980). Where evidence shows the unconveyed land was more valuable per acre than the land actually conveyed, the jury need not apply the general rule of strict apportionment but may consider the actual value of the unconveyed land. *Woodstock Village v. Fowler*, supra. Evidence was presented to show the value of the unconveyed land, pursuant to the strict apportionment rule, was approximately $3,084.15. Plaintiff, however, testified that the unconveyed land was more valuable than the value per acre of the remaining land. In his opinion, the value of the unconveyed land was $6,000. The verdict of $6,500 indicates that the jury did not apply the strict apportionment rule but apparently accepted plaintiff's testimony that the unconveyed land was of greater value per acre than the land actually conveyed. The verdict indicates the jury granted damages pursuant to plaintiff's testimony, plus interest. Therefore, the confusion in the jury charges, if any, was harmless.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 7, 1988 —
REHEARING DENIED NOVEMBER 21, 1988.

*McClure, Ramsay & Dickerson, Allan R. Ramsay*, for appellant.
*Cathey & Strain, Dennis T. Cathey*, for appellees.