A03A1657. MARQUIS TOWERS, INC. et al. v. HIGHLAND GROUP.
(593 SE2d 903)

JOHNSON, Presiding Judge.

This action arises from the failure of a hotel operated as a Ramada Plaza franchise and owned by Marquis Towers, Inc. Marquis and its principal Fred Zohouri[1] sued (i) the franchisor, Ramada Franchise Systems, Inc. ("RFS"), for fraud, negligent misrepresentation, tortious interference, and breach of contract, and (ii) a consulting firm, the Highland Group, for negligence and negligent misrepresentation. RFS filed a counterclaim against Marquis and Zohouri for

---

[1] This cause of action was filed in the name of Fred Zohouri, although Fred Zohouri's full name is Farbod Smith Zohouri.

royalties, liquidated and actual damages, and attorney fees. Following a hearing, the trial court granted summary judgment to RFS and Highland on all claims made by Marquis and Zohouri and to RFS on its counterclaim. After appealing the trial court's order, Marquis and Zohouri moved to withdraw those portions of their appeal that relate to RFS, and that motion is hereby granted. In their remaining appeal, Marquis and Zohouri contend that the trial court erred in granting summary judgment to Highland because genuine issues of fact remain to be resolved by the jury. For the reasons set forth below, we agree and reverse.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[2] A defendant carries this burden by demonstrating the absence of evidence as to one essential element of the plaintiff's case. Should the defendant do so, the plaintiff "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue."[3] Our review is de novo.[4]

Zohouri is the owner and president of Marquis. In 1995, Marquis spent $6,000,000 to buy and refurbish a hotel property located approximately 12 miles north of downtown Atlanta. Shortly before the 1996 Olympics, Marquis opened the property as The Heights Hotel. After the Olympic games ended, RFS approached Zohouri about converting The Heights Hotel into a Ramada Plaza. RFS was in the business of selling franchises bearing the "Ramada" name. Sales representatives from RFS met with Zohouri and told him that RFS was promoting the "Ramada Plaza" concept as a high-end lodging facility. The RFS representatives also told Zohouri that no other Ramada Plaza-type facility would be opened in the Atlanta area until the Marquis property was profitable.

On December 3, 1996, Zohouri executed a license agreement with RFS on behalf of Marquis as well as a personal guarantee of Marquis' performance. From December 1996 through December 1997, the Marquis facility operated at a loss under the Ramada Plaza name. In late December 1997 or early 1998, the description of the hotel in the Ramada 800 Reservation System was changed to indicate that the facility was convenient to downtown Atlanta, which resulted in a doubling of reservations from the Ramada 800 Reservation System.

---

[2] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[3] Id.
[4] *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).

On March 25, 1998, RFS informed Zohouri that a Holiday Inn located on Armour Drive, between the Ramada Plaza and downtown Atlanta, had submitted an application for conversion to a Ramada Inn and Conference Center. RFS invited comments from Zohouri regarding the pending franchise application. Although Zohouri objected to the conversion, RFS informed him that it had conditionally approved the application, and that Zohouri must commission an impact study if he wanted RFS to reexamine its conditional approval. RFS would deny the pending application, "[i]f the impact study concludes that the addition of the proposed property would affect the existing property, on an annual basis, by the revenue equivalent of more than 3 points of occupancy percentage."

RFS provided Zohouri with a list of acceptable consultants, and Zohouri chose the Highland Group to perform the impact study. Peggy Berg performed the impact study and submitted it on behalf of the Highland Group. According to the study, the potential incremental impact to the occupancy at the Ramada Plaza from the conversion of the Armour Drive hotel was less than one percent in each of the following five years. Acting on Zohouri's request, a Marquis employee called Berg and told her that Highland's report was based on false information. Berg disagreed and refused to change her report. RFS accepted Highland's impact study and approved the Armour Drive franchise application.

After the Armour Drive hotel converted to a Ramada hotel, the Ramada Plaza received drastically fewer reservations from the Ramada 800 Reservation System. Zohouri averred that because of additional capital expenditures and marketing efforts, the monthly revenues for the Ramada Plaza eventually exceeded its revenues before the conversion of the Armour Drive hotel. Nonetheless, the Ramada Plaza continued to lose money. In March 2001, Zohouri closed the Ramada Plaza and began conversion of the facility to business condominiums. This suit followed.

Marquis and Zohouri contend that the trial court erred in granting summary judgment to Highland on their negligence and negligent misrepresentation claims. They argue that Highland knew or should have known that the impact study was not conducted in accordance with industry standards. Highland responds that there is insufficient evidence to create a genuine issue of material fact as to each essential element of the negligence and negligent misrepresentation claims. We agree with Marquis and Zohouri.

The elements of a negligence case are: (1) a duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on his part to conform to the standard required; (3) a reasonable close causal connection between the conduct and the

resulting injury; and (4) actual loss or damage resulting to the interests of the other.[5] The essential elements of negligent misrepresentation are "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance."[6]

The parties' arguments address the breach of duty of care, in the case of the negligence claim and the negligent supply element of the negligent representation claim, and the reasonable reliance element of the negligent misrepresentation claim.

1. Marquis and Zohouri contend that they presented evidence showing that Highland breached a duty of care in performing the impact study. We agree.

> The law imposes upon persons performing engineering and other professional and skilled services the obligation to exercise a reasonable degree of care, skill and ability, which generally is taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions. This standard of care properly is the subject of expert opinion. It was necessary here that plaintiffs establish the standard of care applicable to defendants by the introduction of expert opinion evidence. Expert testimony is required because the court and jury are not permitted to speculate as to the standard against which to measure the acts of the professional in determining whether he exercised a reasonable degree of care.[7]

Marquis and Zohouri submitted the affidavit and supplemental affidavit of John R. Crow, who averred that based on his education, training, and 30 years in the hotel industry, he was familiar with impact studies and the standard of care required when conducting and reporting an impact study. Highland contends that the Crow affidavit fails to establish the standard of care applicable to performing impact studies such as the one at issue here. We disagree. In Crow's supplemental affidavit, he avers that the standard of care requires the conductor of an impact study to perform certain tasks, including to "ensure the accuracy of the data, facts, information, and calcula-

[5] *Lau's Corp. v. Haskins*, supra at 492.

[6] *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997).

[7] (Citation and punctuation omitted.) *Dept. of Transp. v. Mikell*, 229 Ga. App. 54, 58 (1) (493 SE2d 219) (1997).

tions being used to determine [the] impact percentages" and "investigate . . . the new hotel management's marketing plans, rate schedules, and target market." Crow further avers that Highland breached this standard of care by, among other things, failing to interview the management of the planned Armour Drive Ramada hotel and by failing to ascertain the correct date a Ramada property was removed from the Ramada 800 Reservation System. We conclude that the Crow affidavit was sufficient to show evidence of the applicable standard of care and that Highland breached that standard of care.

2. Highland contends that Marquis and Zohouri could not reasonably rely on the impact study nor show that it was false because the impact study was on its face an opinion and a prediction of what may occur in the future; and that, accordingly, they have no claim for negligent misrepresentation. "Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence."[8] The question of whether Marquis, Zohouri, and RFS were justified in relying on Highland's report depends upon the circumstances under which the report was made.

> [O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made.[9]

In the context of the report, Highland represented itself to be a professional and the report as its professional work product. "The theory of liability for negligent misrepresentation generally applies to the professional defendants only, who provide information that is false through failure to exercise reasonable care or competence in obtaining information that is relied upon by a third party and such

---

[8] (Citation and punctuation omitted.) *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 793 (2) (b) (359 SE2d 920) (1987). See also *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 524 (2) (448 SE2d 271) (1994).

[9] *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983).

reliance is foreseeable."[10] Reliance was foreseeable because Highland prepared the impact report during the course of its business as a consultant for the hotel industry knowing that it would be relied on by RFS and by Marquis and Zohouri in the context of their dispute over the Armour Drive application. As to whether evidence shows that the impact report was false, Crow avers that Highland's report contains specific factual errors and fails to consider information that would have been obtained if the report had been prepared in accordance with the standard of care. While Highland disputes both the alleged factual inaccuracies as well as its alleged failure to adhere to the standard of care, we conclude that Zohouri and Marquis have presented sufficient evidence to establish a question of material fact for a jury. We conclude that the trial court erred in granting summary judgment to Highland on Zohouri and Marquis' negligence and negligent misrepresentation claims.

*Judgment reversed. Eldridge and Mikell, JJ., concur.*

DECIDED JANUARY 30, 2004.

*James A. Eichelberger*, for appellants.
*Nelson, Mullins, Riley & Scarborough, Richard K. Hines V, Anderson Dailey, Mark Ford, Jeffrey B. Grimm*, for appellee.

---

[10] *Smiley v. S & J Investments*, 260 Ga. App. 493, 496 (2) (580 SE2d 283) (2003) (physical precedent only).
[1] *Nguyen v. Talisman Roswell, LLC*, 262 Ga. App. 480 (585 SE2d 911) (2003).