A07A0832. LILLISTON v. REGIONS BANK.
(653 SE2d 306)

BERNES, Judge.
John Lilliston d/b/a Lilliston Ford appeals the trial court's grant of summary judgment to Regions Bank on Lilliston Ford's claims for negligence, fraudulent concealment, and punitive damages.[1] The trial court entered summary judgment on these claims after concluding that Regions Bank had no affirmative duty to disclose problems with the title to a used vehicle that Lilliston Ford planned to purchase and upon which Regions Bank held a lien. Finding no error by the trial court, we affirm.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

---

[15] See id.; *Melton v. State,* 174 Ga. App. 461, 462 (2) (330 SE2d 398) (1985).

[1] Lilliston Ford does not appeal the trial court's grant of summary judgment on its claims for intentional interference with business relations and breach of the covenant of good faith and fair dealing.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of the grant of summary judgment is de novo. *Marquis Towers v. Highland Group*, 265 Ga. App. 343, 344 (593 SE2d 903) (2004).

Viewed in the light most favorable to Lilliston Ford, the record shows that the Winder branch of Regions Bank held a lien on a used 2003 Hummer that was titled in the name of Hugh S. Worley. Hugh Worley had pledged the Hummer as collateral for a $16,000 loan from Regions Bank for a business venture. The Georgia motor vehicle certificate of title issued to Hugh Worley was regular on its face, was not a replacement title, and properly reflected that Regions Bank was the first lienholder. According to title records, the Hummer had been conveyed to Hugh Worley from its original owners — his brother Bobby Worley and Evelyn Bradberry.

In April 2004, Evelyn Bradberry complained to a customer service representative at Regions Bank that her signature had been forged on the title transferring ownership of the Hummer to Hugh Worley. Following a discussion with the branch manager, Bradberry executed an affidavit of forgery containing her allegations. The branch manager subsequently informed the branch president of the allegations of forgery. However, Regions Bank did not make any entries into its computer system or alert any other bank employees about the allegations of forgery.

Thereafter, on May 5, 2004, an investigator with the Barrow County Sheriff's Department contacted the branch manager of Regions Bank, advised that he was officially investigating the forgery complaint, and requested all documents related to the loan. The branch manager complied with the request, but no action was taken to inform bank employees about the forgery allegations or the sheriff's investigation.

On May 21, 2004, Bobby Worley offered to sell the Hummer to Lilliston Ford, an automobile dealership in McIntosh County that bought and sold used vehicles. John Lilliston, the owner of Lilliston Ford, negotiated with Bobby Worley over a sales price. After agreeing on a sales figure of $37,500, Bobby Worley informed Mr. Lilliston that in fact he did not have title to the vehicle, that his brother Hugh Worley was the vehicle's true record owner, and that Regions Bank held a first priority lien. Bobby Worley said that he would return with his brother to the dealership the next day in order to complete the transaction. Mr. Lilliston agreed to this arrangement and then verified the lien payoff amount by contacting a loan assistant at Regions Bank. A clerical employee at Lilliston Ford later followed up with the loan assistant to verify the payoff information provided about the lien.

It is undisputed that neither Mr. Lilliston nor the Lilliston Ford clerical employee asked the Regions Bank loan assistant whether Regions Bank had knowledge of any problems with the title to the Hummer. Instead, their conversations with the loan assistant were strictly limited to obtaining the lien payoff amount and finding out where to send the payment check. The Regions Bank loan assistant, who was unaware of the forgery allegations, made no representations concerning the status of the title to the Hummer.

On May 22, 2004, Bobby Worley returned to Lilliston Ford with his brother and completed the sales transaction. In return for the Hummer, Lilliston Ford issued a check to Hugh Worley for $22,487.10 and a check to Regions Bank for $15,026.32.

Lilliston Ford placed the Hummer on its lot for sale. But, on May 28, 2004, the sheriff's department informed Lilliston Ford that the Hummer had been stolen and seized the vehicle for evidence. While Lilliston Ford successfully stopped payment on its check issued to Regions Bank, it was unsuccessful in stopping payment on its check issued to Hugh Worley.

Lilliston Ford subsequently commenced the instant action against Regions Bank, contending that Regions Bank had a duty to disclose any problems with the title to the Hummer when Mr. Lilliston and the Lilliston Ford clerical employee had inquired about the lien payoff amount. Among other things, Lilliston Ford asserted claims for negligence and fraudulent concealment, sought compensatory damages in the amount of the check it issued to Hugh Worley, and asked for punitive damages. Regions Bank moved for summary judgment, which the trial court granted after concluding that Regions Bank owed no duty to inform Lilliston Ford of any problems with the Hummer's title. It is from this ruling that Lilliston Ford now appeals.

1. Lilliston Ford maintains that the trial court erred in granting summary judgment on its negligence claim because Regions Bank had an affirmative duty to disclose the allegations of forgery relating to the Hummer's title. We disagree.

> The elements of a negligence case are: (1) a duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on his part to conform to the standard required; (3) a reasonable close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of the other.

*Marquis Towers*, 265 Ga. App. at 345-346. Thus, before a defendant can be held liable for negligence, "some duty to the individual

complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage." (Citations and punctuation omitted.) *City of Douglasville v. Queen*, 270 Ga. 770, 771 (1) (514 SE2d 195) (1999). See also *Holcomb v. Walden*, 270 Ga. App. 730, 731 (607 SE2d 893) (2004). "Whether a duty exists upon which liability can be based is a question of law." (Citation and punctuation omitted.) Id.

The trial court correctly concluded that Regions Bank had no duty to disclose the problems with the title of the Hummer to Lilliston Ford. Absent a confidential relationship, no duty to disclose exists between parties engaged in arms-length business transactions. *Infrasource v. Hahn Yalena Corp.*, 272 Ga. App. 703, 705 (1) (613 SE2d 144) (2005); *American Demolition v. Hapeville Hotel*, 202 Ga. App. 107, 109 (1) (413 SE2d 749) (1991). And, the Supreme Court of Georgia and this Court have held that no confidential relationship exists between a bank and its customers or others with whom the bank deals. See *C & S Nat. Bank v. Arnold*, 240 Ga. 200, 201 (240 SE2d 3) (1977); *Big Bend Agri-Svcs. v. Bank of Meigs*, 174 Ga. App. 493, 494-495 (1) (330 SE2d 422) (1985); *Limoli v. First Ga. Bank*, 147 Ga. App. 755, 757-758 (250 SE2d 155) (1978); *Feltman v. Nat. Bank of Ga.*, 146 Ga. App. 434, 437 (2) (246 SE2d 447) (1978). As such, the Supreme Court of Georgia has held that a customer seeking a loan from a bank in order to purchase property cannot rely upon the bank to investigate or disclose any defects in the title to the property; rather, the customer is "under the duty to prosecute his own inquiries" about the status of the title. (Citation and punctuation omitted.) *C & S Nat. Bank*, 240 Ga. at 201. Likewise, we have held that a bank has no duty to advise a party who is contemplating serving as the guarantor for a bank loan about problems with the viability of the business venture financed by the loan. See *First Union Nat. Bank of Ga. v. Gurley*, 208 Ga. App. 647, 647-650 (1) (431 SE2d 379) (1993); *Trust Co. Bank of Middle Ga. v. Stubbs*, 203 Ga. App. 557, 562 (2) (417 SE2d 373) (1992); *Casgar v. C & S Nat. Bank*, 188 Ga. App. 234, 235-236 (1) (372 SE2d 815) (1988); *Feltman*, 146 Ga. App. at 436-437 (2). Finally, we have held that a bank has no duty to advise a third party creditor about the financial condition of a bank customer with whom the creditor is contemplating doing further business. See *Big Bend Agri-Svcs.*, 174 Ga. App. at 494-495 (1).

Given this precedent, it is clear that Regions Bank had no duty to offer advice or disclose to Lilliston Ford any potential problems with the title to the Hummer. As previously noted, Lilliston Ford never asked Regions Bank about the status of the Hummer's title and never received any information, false or otherwise, about the title. Here, "the parties were engaged in a transaction with each other in an effort to further their own separate business objectives. Under

such circumstances, one party was not under any duty to represent or advance the other's interests." *Infrasource*, 272 Ga. App. at 706 (1). Thus, the onus was on Lilliston Ford to exercise its independent judgment and conduct its own inquiry into the status of the title. See *American Demolition*, 202 Ga. App. at 109 (1).

Lilliston Ford contends that *Eason Publications v. NationsBank of Ga.*, 217 Ga. App. 726 (458 SE2d 899) (1995) and *Citizens Bank of Ball Ground v. Johnson*, 191 Ga. App. 155 (381 SE2d 121) (1989) support its argument that Regions Bank had a duty to disclose. Both cases, however, are plainly distinguishable. *Eason Publications* held that based on OCGA § 7-1-350 and the account agreement between the defendant bank and its customers, the bank was required to notify its customers of changes in its signature verification procedures for checks debited to a customer's account. 217 Ga. App. at 730 (3). Here, in contrast, Lilliston Ford has pointed to no Georgia banking statutes or contractual agreements imposing an affirmative duty to disclose upon Regions Bank. Likewise, *Citizens Bank of Ball Ground* does not support Lilliston Ford's position. That case involved affirmative representations made by the bank defendant about the financial condition of a customer with whom the plaintiff sought to do business; did not address the issue of duty; and held only that the plaintiff had not exercised proper due diligence as a matter of law. 191 Ga. App. at 157-158 (1). Hence, neither *Eason Publications* nor *Citizens Bank of Ball Ground* support Lilliston Ford's position.[2]

For these reasons, we conclude that as a matter of law, Regions Bank had no duty to disclose to Lilliston Ford any problems with the title to the Hummer. Given this absence of a legal duty, the trial court committed no error in granting summary judgment on the negligence claim.

2. Lilliston Ford next contends that the trial court erred in granting summary judgment on its fraudulent concealment claim. Again, we disagree.

"Generally, there can be no fraud without an express misrepresentation." *Miller v. Lomax*, 266 Ga. App. 93, 96 (2) (b) (596 SE2d 232) (2004). A party can be held liable for fraudulently concealing a material fact only if the party has a duty to disclose or communicate the fact. Id. at 97 (2) (b). See also *American Demolition*, 202 Ga. App. at 109 (1). And, as explained in Division 1, Regions Bank had no duty to disclose to Lilliston Ford any problems with the Hummer's title

---

[2] Lilliston Ford also cites to *Gordon v. Irvine*, 105 Ga. 144 (31 SE 151) (1898) in support of its contention that Regions Bank had a duty to disclose. But, unlike the present case, *Gordon* involved the duties of a transferor of a promissory note and addressed the specific warranties applicable to the transfer of a negotiable instrument under Georgia statutory law. Id. at 146-148 (1).

under the facts of this case. For the same reason, the trial court did not err in granting summary judgment on Lilliston Ford's fraudulent concealment claim.

3. Lastly, Lilliston Ford argues that the trial court erred in granting summary judgment on its claim for punitive damages under OCGA § 51-12-5.1, which provides:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

OCGA § 51-12-5.1 (b). We cannot agree. In light of the dismissal of its substantive tort claims, Lilliston Ford's claim for punitive damages was properly dismissed as derivative of those claims. See *J. Andrew Lunsford Properties, LLC v. Davis*, 257 Ga. App. 720, 723 (3) (572 SE2d 682) (2002).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 19, 2007 —<br>RECONSIDERATION DENIED NOVEMBER 6, 2007 — ■

*Glen A. Cheney*, for appellant.
*Stewart, Melvin & Frost, J. Douglas Stewart*, for appellee.